IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-cr-00010-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ROMELL E. BULLOCK,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
(Sentencing Hearing: Order)
_____

Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 1:39 p.m., on the 17th day of July, 2013, in Courtroom 901A, United States Courthouse, Denver, Colorado.

**APPEARANCES**

GUY TILL, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the Plaintiff.

DONALD LOZOW, Attorney at Law, 209 Kalamath Street, Denver, Colorado, 80223, appearing for the Defendant.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

1         (The following proceedings were had and entered of
2   record after the Court heard the arguments of counsel and
3   statement of defendant:)
4         *THE COURT:*  Thank you.
5         Then I'll announce the sentence I intend to impose.
6   Of course, counsel, you'll have a final opportunity to make
7   legal objections before judgment is entered.  If you believe
8   that the sentence is premised upon error or if I raise an issue
9   you haven't had adequate opportunity to consider and address, I
10  invite you to request a continuance.
11        Imposition of a sentence in a federal criminal case is
12  governed by a number of statutes.  The umbrella statute is 18
13  U.S.C. Section 3553.  In imposing sentence in this case, I have
14  to consider the objectives and the factors that are set forth
15  in that section.  That statute requires that the sentence be
16  sufficient but not greater than necessary to satisfy particular
17  objectives.  The sentence must reflect the seriousness of the
18  offense; promote respect for the law; provide just punishment;
19  adequately deter criminal conduct; protect the public from
20  further crimes by the defendant; and provide the defendant with
21  needed educational or vocational training, medical care, or
22  other correctional treatment in the most effective manner.
23        To fashion a sentence that meets these objectives, the
24  statute directs me to consider certain factors:  The nature and
25  circumstances of the offense; the history and characteristics

1   of the defendant; the kinds of sentences that are available;
2   the sentence prescribed by the federal sentencing guidelines;
3   the need to avoid unwarranted sentence disparities among
4   defendants with similar records found guilty of similar
5   conduct; and in the appropriate case, I would consider the need
6   for restitution.
7           Now, at the beginning of this hearing, I identified
8   the documents that I studied in preparation for it.  I
9   confirmed with counsel that both sides, including the
10  defendant, had had an opportunity to review and consider those
11  documents.  I asked whether there were any additional documents
12  to consider and was told that there were not.  I asked whether
13  there was any dispute as to the factual contents of the
14  presentence report; there was not.  I asked whether there was
15  any dispute as to the calculation of the sentence under the
16  federal sentencing guidelines; there was not.
17           I therefore start with the calculation under the
18  federal sentencing guidelines.  It is as follows:
19           For violation of 21 U.S.C. Section 846 and 856(a)(1)
20  (2) and (b), sentencing guideline Section 2D1.8 applies.  It
21  directs that the total offense level be determined in
22  accordance with Section 2D1.1.  Here, because the type and
23  amount of drugs involved in this offense was approximately 8.58
24  kilograms of marijuana, the Base Offense Level is 14, in
25  accordance with Section 2D1.1(c)(13).

1         There is a specific offense characteristic under
2    Section 2D1.1(b)(12).  That's a two-level increase when a
3    defendant maintains a premises for the purpose of manufacturing
4    or distributing a controlled substance.  According to the
5    stipulation of facts in the plea agreement, the defendant paid
6    monthly dues to support the Hells Lovers motorcycle club
7    activities, which included maintaining and using the clubhouse
8    for the purpose of manufacturing or distributing a controlled
9    substance.  He was aware of the illicit drug use by other
10   members and may have participated in it as well.
11        Then there is a downward adjustment for his acceptance
12   of responsibility.  The offense level is reduced by three
13   levels because the offense level is 16 or greater, and both
14   provisions of Section 3E1.1 have been satisfied.  This is the
15   largest acceptance of responsibility downward adjustment
16   permissible under the guidelines; it's a three-level reduction.
17   That results in a Total Offense Level of 13.
18        The other component under the guidelines is
19   calculation of someone's criminal history.  And here,
20   Mr. Bullock has a criminal history that dates back into the
21   early '90s.  He has a number of convictions since he became an
22   adult.  The total number of points under the criminal history
23   calculation is 6.  That puts him in Criminal History Category
24   III.  That is Category III out of 6 categories.  There are a
25   number of convictions for which no points have been assigned

1  for various reasons, including the age or the nature of the
2  conviction.  But there are some serious convictions,
3  approximately six to ten years ago, which comprise the
4  calculation leading to the Criminal History Category of III.
5          With a Criminal History Category of III and an offense
6  level of 13, the guidelines recommend incarceration of 18 to 24
7  months, a supervised release term of 1 to 3 years, a fine of
8  3,000 to $500,000, a special assessment of $100 is mandated by
9  statute.
10         Under the guidelines, the Government has moved for
11 what is called a 5K1.1 departure.  That is due to Mr. Bullock's
12 debriefing with the Government and explanation of how the Hells
13 Lovers motorcycle club worked, its structure, its membership,
14 et cetera.
15         With a 5K1.1 departure, the request of the Government
16 is that there be a 40 percent reduction in the incarceration
17 time period.  A 40 percent reduction off of the bottom end of
18 the guidelines would take the guideline calculation for
19 incarceration to approximately 10 months.  The defendant
20 supports this motion, and the Court makes an independent
21 determination as to whether it is warranted.
22         There has been in this case a pattern of 5K1.1 motions
23 made by the Government with regard to a number of defendants.
24 The 40 percent reduction in sentence that is requested by the
25 Government is consistent with the same reduction that is

1  requested with regard to other defendants.  And therefore,
2  taking into account the need to avoid unwarranted sentence
3  disparities among defendants with similar records found guilty
4  of similar conduct, and taking into account the representations
5  made by the Government as to the debriefing provided by
6  Mr. Bullock, I grant the 5K1.1 motion.  That changes the
7  calculation under the guidelines to a custodial period of 10
8  months, supervised release still of 1 to 3 years --
9            And I'm going to ask our probation officer, how does
10 it change the fine range?
11           *PROBATION OFFICER:*  Your Honor, that would be $2,000
12 to still $500,000.
13           *THE COURT:*  Okay.  $2,000 to $500,000.  Thank you.
14           And this puts -- puts Mr. Bullock in zone B, correct?
15           *PROBATION OFFICER:*  That is correct, Your Honor.
16           *THE COURT:*  All right.  Mr. Lozow on behalf of the
17 defendant has asked for a variant sentence.  And, actually, I
18 think that request for a variant sentence is moot in light of
19 the granting of the 5K1.1 motion by the Government.
20           Is that correct, Mr. Lozow?
21           *MR. LOZOW:*  Yes, Your Honor.
22           *THE COURT:*  Okay.  Now a word about what we do with
23 regard to this guideline sentence.  There is often a
24 misunderstanding about the purpose of sentencing.  It's not to
25 determine whether the defendant is a good person or a bad

 1    person.  I'm not capable of making that determination, and it's
 2    not appropriate for me to do so.  I subscribe to the notion
 3    that every person is as good as their best deed and as bad as
 4    their worst deed.  And since I don't know a person's best deed
 5    or worst deed, I can't set the parameters as to a person's
 6    goodness or badness.
 7             What sentencing is about is holding somebody
 8    responsible for their conduct.  And that is why I asked the
 9    questions that I did.  Mr. Bullock is very fortunate to have
10    many people who think highly of him.  But, frankly, that
11    doesn't affect sentencing.  Whether someone has a supportive
12    family, whether someone has supportive friends is a benefit to
13    the defendant; but that is not a factor that I take into
14    account in sentencing.  Because sometimes people make bad
15    choices when they have a lot of supportive family, and
16    sometimes people make bad choices when they don't have any
17    supportive family.  What they're being held accountable for is
18    their bad choice, not whether they're fortunate enough to have
19    supportive family or not.
20             Now, what influences my decision in this case is the
21    actions of Mr. Bullock, both the mistakes he's made -- and he
22    does have a Criminal History Category of III -- but also the
23    fact that in the last five or six years, he has worked
24    diligently to build a business and to change his behavior.
25             In his allocution, after some questioning, he could

1   identify what he did wrong, and he could commit to not doing
2   that in the future.  That is one of the indicators that the
3   Court takes into account in determining whether I need to
4   protect the public from further crimes by the defendant.  How
5   self-aware is he?  Has he changed how he operates?  Does he
6   know what he did wrong?  Is he committed to not doing that
7   again in the future?
8            I'm convinced that Mr. Bullock regrets the impact this
9   conviction has had on his family, but that is not the regret
10  that I asked about.  It is, instead, regret for the conduct
11  that was illegal.  And as I've said, ultimately, Mr. Bullock
12  explained what he did that was illegal and that he does not
13  intend to do that in the future.
14           Keeping that in mind, and noting the sentences imposed
15  against other similarly situated defendants here, I intend to
16  impose a guideline sentence, which is a zone B sentence.  It
17  will be a sentence of time served, followed by supervised
18  release of 2 years, with a condition of home confinement and
19  electronic monitoring for a period of 10 months.
20           I do not intend to impose a fine, finding that
21  Mr. Bullock lacks the ability to pay a fine.  I do not intend
22  to impose any special conditions on supervised release, other
23  than home detention, but all mandatory and standard conditions
24  will apply.  I intend to impose a special assessment of $100.
25           So summarizing the sentence I intend to impose, it is

1  time served followed by 2 years of supervised release, with a
2  special condition of home detention of 10 months, no fine, and
3  a special assessment of $100.
4           Is there any need for clarification or further
5  explanation or a request for a continuance?
6           *MR. TILL:*  Not from the Government, Your Honor.
7           *MR. LOZOW:*  Not from the defendant, Your Honor.
8           *THE COURT:*  Thank you.
9           Having considered the sentencing objectives and
10 sentencing factors as articulated in 18 U.S.C. Section 3553,
11 pursuant to the Sentencing Reform Act of 1984, it is the
12 judgment of the Court that the defendant, Romell E. Bullock, be
13 committed to the custody of the Bureau of Prisons to be
14 imprisoned for the time that he has already served.
15          He will be, therefore, placed on immediate supervised
16 release for a term of 2 years, with -- at the direction of the
17 probation officer, he will report in person to the probation
18 office and shall make appropriate arrangements for home
19 detention and electronic monitoring consistent with the special
20 condition imposed on supervised release.
21          While he's on supervised release, he will not commit
22 another federal, state, or local crime; he will not possess a
23 firearm as defined in 18 U.S.C. Section 921; he'll comply with
24 the standard conditions that have been adopted by the Court.
25 He will not unlawfully possess a controlled substance.  He will

1  refrain from any unlawful use of a controlled substance.  He
2  will submit to at least one drug test within 15 days of release
3  on supervised release and at least two periodic tests
4  thereafter.  He'll cooperate in the collection of DNA as
5  directed by the probation officer.  No fine is imposed for the
6  reasons specified, but he will pay a special assessment of
7  $100, which is due and payable immediately.  And for the period
8  of 10 months on supervised release, he will be subject to home
9  confinement, monitored electronically.
10      Mr. Bullock, to the extent that you have a right to
11 appeal, you must exercise that right within the next 14 days.
12 If you do not do so, you lose your right to appeal.  Now,
13 ordinarily, Mr. Lozow would take care of that for you.  To --
14 in order to exercise your right to appeal, you would have to
15 file a notice of appeal, and he would do that.  But if for some
16 reason you want to appeal, and he's unable or unwilling to file
17 the notice of appeal for you, you can request and I will direct
18 the Clerk of Court to file a notice of appeal on your behalf.
19      Is there any further business to bring before the
20 Court?
21      *MR. TILL:*  No, Your Honor.  Thank you.
22      *MR. LOZOW:*  No, Your Honor.  Thank you.
23      *THE COURT:*  Thank you, Mr. Till; thank you, Mr. Lozow.
24      Good luck to you, Mr. Bullock.  Hope not to see you
25 back here in this courtroom.

1    Is there a bond to be exonerated?

2    *PROBATION OFFICER:* Yes, there is, Your Honor.

3    *THE COURT:* Thank you. The bond is exonerated. That

4  will conclude this matter. We'll stand in recess.

5    *MR. LOZOW:* Thank you, Your Honor.

6    (Recess at 2:27 p.m.)

7                    REPORTER'S CERTIFICATE

8

9       I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.

10

11       Dated at Denver, Colorado, this 17th day of July, 2013.

12                              s/Therese Lindblom

13                        _____
                           Therese Lindblom,CSR,RMR,CRR

14

15

16

17

18

19

20

21

22

23

24

25