```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
    Criminal Action No. 12-CR-00010-MSK
 3
    UNITED STATES OF AMERICA,
 4
         Plaintiff,
 5
    vs.
 6
    ROMELL E. BULLOCK,
 7
         Defendant.
 8  _____

 9                      REPORTER'S TRANSCRIPT
                          Change of Plea
10  _____

11          Proceedings before the HONORABLE MARCIA S. KRIEGER,

12  Judge, United States District Court for the District of

13  Colorado, commencing at 3:30 p.m., on the 26th day of June,

14  2012, in Courtroom A701, United States Courthouse, Denver,

15  Colorado.

16                          APPEARANCES

17          Guy Till, U.S. Attorney's Office, 1225 17th Street

18  East, Suite 700, Denver, CO 80202, appearing for the plaintiff.

19          Bradley Lozow of Lozow & Lozow, P.C., 209 Kalamath

20  Street, Suite #23 Denver, CO 80223, appearing for the

21  defendant.

22

23

24  Proceeding Recorded by Mechanical Stenography, Transcription
     Produced via Computer by Janet M. Coppock, 901 19th Street,
25       Room A257, Denver, Colorado, 80294, (303) 893-2835
```

```
 1                           PROCEEDINGS

 2          THE COURT:  Court is convened today in Case No.

 3  12-CR-10, which is encaptioned for purposes of today's hearing

 4  a change in plea as the United States of America v. Romell E.

 5  Bullock.

 6          Could I have entries of appearance, please?

 7          MR. TILL:  Your Honor, I am Guy Till.  I am an

 8  Assistant United States Attorney representing the government.

 9  Also present at counsel table to assist me today is ATF Special

10  Agent Jason Cole.

11          THE COURT:  Good afternoon and welcome.

12          MR. LOZOW:  Good afternoon, Your Honor.  For the

13  record --

14          THE COURT:  I can't hear you, sir.

15          MR. LOZOW:  Good afternoon, Your Honor.  For the

16  record, Brad Lozow appearing on behalf of Mr. Bullock who is by

17  my side.  We did not have the ability to file a motion to

18  substitute appearance today.  Don Lozow has a health issue,

19  Your Honor.  He is at the hospital.  The client has given me

20  permission to stand in.

21          I have been through all the paperwork with him.  I

22  believe he is comfortable in me standing in my father's place

23  subject to your approval.  I spoke to the government about that

24  as well, Your Honor.

25          THE COURT:  Thank you.
```

1          Mr. Bullock, would you please stand.  Do you have any

2     objection to Mr. Brad Lozow representing you for purposes of

3     this hearing?

4          THE DEFENDANT:  No, ma'am.

5          THE COURT:  Thank you.

6          Would the two of you please go to the lectern.  You

7     will need the Plea Agreement and Statement in Advance.

8          MR. LOZOW:  Already there, Your Honor.

9          THE COURT:  Great.  Thanks.

10          MR. LOZOW:  We are there, Your Honor.  We have both in

11     front of us.

12          THE COURT:  Thank you.

13          This matter is before the Court for a change in the

14     defendant's plea and for re-arraignment pursuant to Rule 10 and

15     for consideration and advisement with regard to the parties'

16     Plea Agreement in accordance with Rule 11.

17          The record reflects that the defendant was charged in

18     two indictments, first the original indictment found at Docket

19     No. 1, and also Docket No. 180, the superseding indictment.

20     The Plea Agreement indicates that although Mr. Bullock has

21     entered a plea of not guilty to all of the charges that have

22     been brought against him, he now desires to change his plea to

23     a plea of guilty to the charge in Count 31 of the superseding

24     indictment and that the government agrees to dismiss all

25     remaining counts in both indictments; is that correct?

1          *MR. LOZOW:*  It is from our perspective, Your Honor.

2          *THE COURT:*  Thank you.

3          For the government?

4          *MR. TILL:*  Yes, Your Honor, it is correct.

5          *THE COURT:*  Would you please re-arraign.

6          *MR. TILL:*  Yes, Your Honor.

7          Sir, are you the same Romell E. Bullock who is

8     indicted by the grand jury in Count 31 of this case?

9          *THE DEFENDANT:*  Yes, sir.

10         *MR. TILL:*  Sir, in Count 31 the grand jury charged you

11    with conspiracy to use and maintain drug-involved premises.

12         The allegation is that between on or about

13    January 1st, 2005, and on or about January 20th, 2012, in the

14    State and District of Colorado, the defendants, and the names

15    and number of defendants including Cory Riley and Lawrence T.

16    Martin, Thomas Shrach, Jr., yourself and Gregory A. Collins,

17    and it says that you knowingly agreed with one another and with

18    others, to the Grand Jury known and unknown, to maintain and to

19    use a place, to wit: premises informally known as the Hell's

20    Lovers Motorcycle Club clubhouse for the purpose of using and

21    distributing quantities of a substance containing a detectable

22    amount of cocaine, a Schedule II controlled substance, and

23    quantities of a substance and mixture containing a detectable

24    amount of marijuana, a Schedule I controlled substance, all in

25    violation of Title 21, United States Code, Sections 846 and

1    856(a)(1) and (2) and (b.)

2              Sir, do you understand the charge?

3         THE DEFENDANT:  Yes, sir.

4         MR. TILL:  Do you have any questions about the charge?

5         THE DEFENDANT:  No, sir.

6         MR. TILL:  Sir, today how do you plead to Count 32, do

7    you plead guilty or do you plead not guilty?

8         MR. LOZOW:  Your Honor, may I interrupt?  I think the

9    government meant Count 31.

10        MR. TILL:  I am sorry if I misspoke.  I definitely did

11   mean Count 31.  How do you plead to Count 31, sir, the count I

12   just read, do you plead not guilty or do you plead guilty?

13        THE DEFENDANT:  Guilty.

14        MR. TILL:  Thank you, sir.

15        THE COURT:  Thank you.

16             As of this moment, Mr. Bullock, you are not bound by

17   your plea of guilty.  Indeed you are not bound by this plea

18   until I accept it.  You can change your mind at any time during

19   this hearing until I accept your plea.

20             In order to accept your plea, I have to be sure that

21   you understand the charges that have been brought against you.

22   You understand your choices and the consequences that flow from

23   those choices.  I have to be sure that your decision to plead

24   guilty is voluntary and you haven't been pressured into it.  I

25   have to find that there is a factual basis for your plea.  And

1    because the Plea Agreement also includes waiver of other

2    rights, I have to be sure that you understand those rights and

3    are knowingly and voluntarily waiving them.

4          Throughout this hearing I want you to let me know if

5    there is anything you don't understand or if you have any

6    questions.  If you can't hear me or you don't understand

7    something I say or ask, tell me.  If you have questions about

8    what I have said or what it means, ask me.  And if you would

9    like to confer with Mr. Lozow at any time, just let me know and

10   we will take a brief recess so that you can talk together

11   privately.

12         I begin by asking you a number of questions.  These

13   questions are not intended to trap, embarrass, insult or offend

14   you.  The questions are important because your answers are

15   important.  It's your answers that I assess in order to

16   determine whether I can accept your plea or not.  Therefore,

17   you must answer my questions truthfully and completely.

18         Indeed, just like a witness, you take a solemn oath

19   promising to tell the truth.  And if you don't, your answers

20   can be used against you if an action is brought against you for

21   false statement or perjury.

22         Do you understand?

23         *THE DEFENDANT:*  Yes, ma'am.

24         *THE COURT:*  Do you want to proceed?

25         *THE DEFENDANT:*  Yes, ma'am.

1          THE COURT:  Would you please administer the oath.

2          (Whereupon, the defendant was sworn.):

3          THE DEFENDANT:  Yes.

4          THE COURT:  Mr. Bullock, how old are you?

5          THE DEFENDANT:  36.

6          THE COURT:  Sir, you are going to need to speak loudly

7   and into the microphone, please.

8          THE DEFENDANT:  36.

9          THE COURT:  What level of school did you complete?

10          THE DEFENDANT:  I am currently in college.

11          THE COURT:  What's the highest level you have

12   completed?

13          THE DEFENDANT:  I am going for my bachelor degree.

14   Oh, completed an associate's degree and high school.

15          THE COURT:  How many years have you proceeded through

16   college?

17          THE DEFENDANT:  This is my second year.

18          THE COURT:  So you are essentially a sophomore?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Thank you.  Do you have any difficulty

21   reading or writing?

22          THE DEFENDANT:  No.

23          THE COURT:  Within the last 24 hours, have you taken

24   any medication?

25          THE DEFENDANT:  No.

1    THE COURT:  Within the last 24 hours, have you used

2  any drug or alcohol?

3    THE DEFENDANT:  No.

4    THE COURT:  To the best of your knowledge, have you

5  ever been diagnosed with any form of mental illness?

6    THE DEFENDANT:  No.

7    THE COURT:  Is there anything about the way you feel

8  today, physically or emotionally, that prevents you from

9  understanding what is happening?

10    THE DEFENDANT:  No.

11    THE COURT:  Have you read and do you understand the

12  charges against you in the original indictment and the

13  superseding indictment?

14    THE DEFENDANT:  Yes, ma'am.

15    THE COURT:  Have you discussed those with your

16  attorney?

17    THE DEFENDANT:  Yes, ma'am.

18    THE COURT:  Have you asked him all the questions that

19  you had about them?

20    THE DEFENDANT:  Yes, ma'am.

21    THE COURT:  Has he answered all of your questions?

22    THE DEFENDANT:  Yes.

23    THE COURT:  Are there any other questions you would

24  like to ask Mr. Lozow who is standing next to you?

25    THE DEFENDANT:  No, ma'am.

1    *THE COURT:*  Mr. Lozow, would you please identify the

2   Plea Agreement for the record.

3        *MR. LOZOW:*  Does the Court want me to identify it by

4   Court Exhibit 1, Your Honor?

5        *THE COURT:*  That's right.

6        *MR. LOZOW:*  We have that in front of us as Court

7   Exhibit 1, Your Honor.

8        *THE COURT:*  Mr. Bullock, would you please look at

9   Court Exhibit 1, please.  Have you read this document?

10        *THE DEFENDANT:*  Yes, ma'am.

11        *THE COURT:*  Have you discussed it with your attorney?

12        *THE DEFENDANT:*  Yes.

13        *THE COURT:*  Have you asked him all the questions you

14   had about it?

15        *THE DEFENDANT:*  Yes, ma'am.

16        *THE COURT:*  Has he answered all of your questions?

17        *THE DEFENDANT:*  Yes, ma'am.

18        *THE COURT:*  Are there any other questions you would

19   like to ask about this document?

20        *THE DEFENDANT:*  No, ma'am.

21        *THE COURT:*  This document has a lot of legal language

22   in it.  Do you understand what it says and what it means?

23        *THE DEFENDANT:*  Yes, ma'am.

24        *THE COURT:*  Does it reflect all of your agreement with

25   the government?

1          *THE DEFENDANT:*  Yes, ma'am.

2          *THE COURT:*  Did you sign it?

3          *THE DEFENDANT:*  Yes, ma'am.

4          *THE COURT:*  Would you look at the last page, please.

5   Does that document bear your signature?

6          *THE DEFENDANT:*  Yes, ma'am.

7          *THE COURT:*  Would you please turn to Page 4, Paragraph

8   F.  Have you read this provision?

9          *THE DEFENDANT:*  Yes, ma'am.

10          *THE COURT:*  Do you understand that you are giving up

11  or waiving your right to appeal from the prosecution,

12  conviction or sentence in this case?

13          *THE DEFENDANT:*  Yes, ma'am.

14          *THE COURT:*  You understand you are limiting yourself

15  to very narrow circumstances under which you can appeal?  You

16  can only appeal if the penalty imposed exceeds the maximum in

17  the statute of conviction or the sentence exceeds the

18  applicable sentencing guideline range or the adjusted offense

19  level for purposes of calculating that range is greater than

20  21.  Do you understand that?

21          *THE DEFENDANT:*  Yes, ma'am.

22          *THE COURT:*  And if you read a little further in this

23  paragraph, you are also giving up your right to collaterally

24  attack any judgment that's entered in this case.  Now, that

25  right we often refer to as the right to seek a writ of habeas

1    corpus.  And you are giving that up as well except under very

2    limited circumstances, only in circumstances where there is a

3    retroactive change in the applicable guidelines or sentencing

4    statute or you claim that you were denied effective assistance

5    of counsel or you claim that you were the victim of

6    prosecutorial misconduct.  Do you understand that?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  And do you understand that this provision

9    also states that if the government appeals the sentence imposed

10   by the Court, that you are released from these waiver

11   provisions?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Do you have any questions about that?

14             THE DEFENDANT:  No.

15             THE COURT:  Thank you.

16             Mr. Lozow, does Exhibit 1 bear your signature?

17             MR. LOZOW:  It bears my father's, Your Honor.  I can

18   re-sign it if you would like me to.  I went over it verbatim

19   with Mr. Bullock prior to the Court calling the case.

20             THE COURT:  It doesn't need your signature.  Do you

21   recognize your father's?

22             MR. LOZOW:  It is.  It is his signature.

23             THE COURT:  Thank you.  Did you answer all of

24   Mr. Bullock's questions?

25             MR. LOZOW:  I did, Your Honor.

1          *THE COURT:*  Are you satisfied that he understands the

2    contents of Exhibit 1?

3          *MR. LOZOW:*  I am, Your Honor.

4          *THE COURT:*  Did you or your father review the

5    discovery in this case?

6          *MR. LOZOW:*  My father did, Your Honor.

7          *THE COURT:*  All right.  Did you discuss it with him?

8          *MR. LOZOW:*  Yes, I have, Your Honor.

9          *THE COURT:*  Does it comport with the facts recited in

10   the Plea Agreement?

11         *MR. LOZOW:*  Yes, Your Honor.

12         *THE COURT:*  Thank you.

13         Mr. Till, does Exhibit 1 also bear your signature?

14         *MR. TILL:*  It does, Your Honor.

15         *THE COURT:*  Thank you.

16         Mr. Bullock, the Plea Agreement in front of you

17   contains a statement of what the government believes it could

18   prove if this matter were to go to trial.  By entering into

19   this Plea Agreement you are admitting that these facts are

20   true.  I will treat them as true for purposes of considering

21   your plea and also for purposes of sentencing.  Thus, I am

22   going to ask Mr. Till to recite the facts you have agreed to.

23         Listen closely to what he says because when he

24   finishes, I am going to ask you whether these facts are true.

25   You must tell me if you have any disagreement with the facts

 1    recited by Mr. Till.  Do you understand?

 2              THE DEFENDANT:  Yes, ma'am.

 3              THE COURT:  Mr. Till, will you please recite the facts

 4    upon which the parties agree.

 5              MR. TILL:  Yes, Your Honor.  The facts are as follows:

 6              Between January 2005 and January 2012, as witnessed in

 7    part by an ATF undercover special agent and a number of

 8    confidential human sources of information working with law

 9    enforcement, on Friday and Saturday nights of the average week,

10    the premises informally known as Hell's Lovers Motorcycle Club

11    clubhouse, located in the Denver metropolitan area, within the

12    District of Colorado, would be the scene of gatherings where

13    Hell's Lovers Motorcycle Club members and visitors consumed

14    marijuana and cocaine.  The Hell's Lovers Motorcycle Club

15    clubhouse was the scene of marijuana consumption by 30 to 40

16    persons on any given Friday or Saturday night.  Cocaine was

17    also consumed and shared at the Hell's Lovers Motorcycle Club

18    clubhouse on a regular basis.

19              The routine and repeated uses of marijuana and cocaine

20    at the Hell's Lovers Motorcycle Club clubhouse was known to the

21    defendant and to other Hell's Lovers Motorcycle Club members.

22    The defendant knew marijuana was shared and used routinely and

23    regularly at the clubhouse.  The defendant used marijuana at

24    the clubhouse.  During the conspiracy, the defendant was a

25    fully patched and "christened" Hell's Lovers Motorcycle Club

1   member.  The defendant paid monthly dues to support Hell's

2   Lovers Motorcycle Club and the Colorado Chapter Hell's Lovers

3   Motorcycle Club clubhouse.

4         The Hell's Lovers Motorcycle Club clubhouse was

5   financially supported by dues paid by the defendant and other

6   members of Hell's Lovers Motorcycle Club, including fully

7   patched and "christened" members, probationary members,

8   prospective members and "property of" female associates.

9   Clubhouse expenses such as rent and utilities were paid by the

10  Hell's Lovers Motorcycle Club Chapter Treasurer using proceeds

11  from the sale of liquor at the clubhouse and the Hell's Lovers

12  Motorcycle Club member dues.

13        The parties stipulate and agree for purposes of this

14  Plea Agreement to make calculations based on marijuana dosage

15  information from the Typical Weight Per Unit Table in the

16  application notes for Section 2D1.1:  One marijuana cigarette

17  weighs .5 grams.  Two marijuana cigarettes equal one gram.  Two

18  thousand marijuana cigarettes equal 1 kilogram of marijuana.

19        The parties stipulate and agree for the purposes of

20  this Plea Agreement that 30 or more persons used marijuana at

21  the clubhouse on Friday and Saturday nights unless the Hell's

22  Lovers Motorcycle Club chapter was on a road trip.  The

23  defendant contends there was a road trip each month.  The

24  government believes there were six to eight out of town road

25  trips a year.  The government calculations use 44 weeks a year.

1  The defense asserts the calculation should be based on 40 weeks

2  a year.  The government contents approximately 2,640 -- 2,640,

3  there is a typo here, Your Honor.

4        So there is the word "thousand" should be taken out.

5  With the Court's permission, I will make that change in the

6  original.

7        The government contends approximately 2,640 marijuana

8  cigarettes (equivalent to approximately 1.32 kilograms of

9  marijuana) would be used at the clubhouse each year.  In the

10  seven-year period 2005 to 2012, (there was a period of

11  approximately six months when the Hell's Lovers Motorcycle Club

12  did not have a clubhouse location), approximately

13  8.58 kilograms of marijuana was used at the clubhouse.

14        From time to time within the last five years, firearms

15  were present at the clubhouse.  On January 20th, 2012, a search

16  warrant executed at the clubhouse resulted in the recovery of

17  three firearms.  One of the firearms was described to

18  investigators by a fully patched "christened" member of Hell's

19  Lovers Motorcycle Club as a "clubhouse" firearm.

20        The Colorado Chapter of the Hell's Lovers Motorcycle

21  Club at all times pertinent had more than 10 members; as a

22  national organization the Hell's Lovers Motorcycle Club at all

23  times pertinent had more than 100 members.

24        Those are the facts.  May I make the correction?

25        *THE COURT:*  Please.

1          MR. TILL:  Your Honor, I've made the correction on

2     Page 8.

3          THE COURT:  Thank you.

4          Mr. Bullock, are those facts true?

5          THE DEFENDANT:  Yes, ma'am.

6          MR. LOZOW:  Your Honor, all parties have initialed and

7     dated that correction, Your Honor.

8          THE COURT:  Thank you.

9          Then, Mr. Bullock, let's talk about penalty here.  The

10    maximum statutory penalty for Count 31 is 20 years of

11    imprisonment, a fine of $500,000, both to be imposed.  The term

12    of imprisonment can be followed by up to 33 -- I am sorry,

13    three years of supervised release and there is a mandatory $100

14    special assessment fee.

15         Now, in the federal system we don't measure

16    imprisonment in terms of years.  We measure it in terms of

17    months.  There is no automatic reduction and there is no

18    parole.  That means that every month you are sentenced to serve

19    you will serve.

20         There are a limited number of ways to reduce the

21    sentence, and several of those you have given up by the terms

22    of this Plea Agreement.  First, the government can file a

23    motion to reduce the sentence shortly after a judgment is

24    entered.  Second, you can initiate an appeal, and if you are

25    successful, you can be resentenced, but you are giving up those

 1    rights except in very limited circumstances.  Third, you can

 2    collaterally attack the judgment that's entered by seeking a

 3    writ of habeas corpus, but remember, again you have given up

 4    those rights except under very limited circumstances.

 5          And finally, the Bureau of Prisons can give you

 6    limited amounts of credit against your sentence for good time

 7    served.  The Bureau of Prisons has the discretion to give up to

 8    54 days per year good time credit, but that's a determination

 9    they make on an individualized basis each year based on whether

10    your behavior comports with their rules and regulations.

11          Now, after completion of a prison term, there is a

12    term of supervised release which can last as long as three

13    years.  And while you are on supervised release, you are

14    required to comply with a number of conditions that regulate

15    your behavior.

16          Those conditions fall into two categories, standard

17    conditions and special conditions.  Standard conditions apply

18    to all terms of supervised release and special conditions are

19    unique to you and to your particular circumstances.  As you

20    might guess, there are lots of standard conditions.  I am only

21    going to mention three, but you should understand that there

22    are many more.  The three that I draw to your attention are

23    that you cannot commit any new crimes, state, federal or local.

24    You cannot use, sell or possess any illegal substances.  And

25    you cannot use, sell or possess any prohibited firearms or

1   destructive devices.

2          Now, in addition to these standard conditions and the

3   rest of the standard conditions, there can be special

4   conditions, and special conditions are unique to you and to

5   your particular circumstances.  Lots of times I don't have any

6   idea what special conditions are appropriate at this juncture

7   in the case, but I can guess that based upon this particular

8   charge, it is likely that you will be required to go through

9   periodic drug checks and you will be required to participate in

10  a drug rehabilitation program.

11         If you have abused alcohol in the past, you may be

12  required to participate in an alcohol rehabilitation program.

13  And if you have had or develop mental health issues, you may be

14  required to obtain a mental health assessment and participate

15  in mental health treatment.

16         What's important about all of these conditions is that

17  they are mandatory.  That means you must comply with all of

18  them all of the time, and a probation officer will monitor your

19  behavior to make sure that you do.  It's not good enough to try

20  and it's not good enough to comply with some conditions and not

21  others because if you don't comply with a required condition,

22  the probation officer with the assistance of the government can

23  bring you back here to this courtroom or to another courtroom

24  and ask that your supervised release term be revoked.  And if

25  it is revoked, you can be sent back to prison for another term.

1          Now, the penalty that will be imposed here is not just

2     a function of the statute of conviction.  In deciding what

3     penalty is appropriate, I have to consider other statutes, and

4     the most important of these is 18 U.S.C. 3553.  I call it the

5     umbrella statute for sentencing because it covers sentencing in

6     all contexts.  It obligates me to impose a sentence that is

7     sufficient, but not greater than necessary, in order to

8     accomplish particular objectives.

9          So your sentence must promote respect for the law,

10    provide just punishment, adequately deter criminal conduct,

11    protect the public from further crimes by you, and provide you

12    with needed educational or vocational training, medical care or

13    other correctional treatment in the most effective manner.

14         In order to fashion a sentence that meets these

15    objectives, the same statute tells me what factors to consider.

16    I consider the nature and circumstances of the offense, your

17    history and characteristics, the kinds of sentences that are

18    available, what the federal sentencing guidelines would

19    require, the need to avoid unwarranted sentencing disparities

20    among defendants with similar records found guilty of similar

21    conduct, and in the appropriate case I would consider

22    restitution.

23         I know that your attorney and the government's

24    attorney have calculated what they expect the sentencing range

25    to be under the federal sentencing guidelines.  There are

1    several pages that discuss this, but the guidelines prediction

2    begins on Page 12 of Exhibit 1.   There are several things that

3    you need to know about this prediction.

4         First of all, it's not binding.   There is no

5    guaranteed sentence here.   Secondly, it's just that, a

6    prediction.   At the time of sentencing we will not be working

7    from Exhibit 1.   We will be working from another document

8    called a Presentence Investigation Report.   That report is

9    prepared by the probation office of the court and you and your

10   attorney and the government's attorney will have an opportunity

11   to review that report to make sure that the information in it

12   is accurate and complete.

13        You and your attorney will meet with the probation

14   officer between now and the time of sentencing.   And once the

15   report is prepared, you will likely go over it with each other

16   to make sure that the information is accurate.   Sometimes the

17   calculation under the guidelines in the Presentence Report is

18   different than what is in the Plea Agreement, and that's one

19   reason you want to carefully review the report.

20        Now, finally you should understand that the guideline

21   calculation is only one factor that I consider in determining

22   your sentence.   If that calculation doesn't meet these

23   sentencing objectives I referred to a few minutes ago, then I

24   can impose a non-guideline sentence.   A non-guideline sentence

25   can be higher than the guideline range or lower than the

1    guideline range, whatever is necessary to meet those

2    objectives.

3            Now, your sentencing hearing will occur several weeks

4    from now.  Before that hearing, as I said, you and your

5    attorney will meet with the probation officer.  Please don't be

6    confused by the title probation officer.  It's just the title

7    of the person preparing the Presentence Report, but it has

8    nothing to do with the penalty to be imposed.

9            At the time of the sentencing hearing, your attorney

10   and the government's attorney will argue about what sentence

11   should be imposed.  Each side may focus on a particular aspect,

12   what information is in the Presentence Report, the guideline

13   calculation that is contained in that report, whether a

14   guideline or a non-guideline sentence should be imposed or what

15   particular sentence in the guideline range is appropriate.

16           You will have an opportunity to make a statement, but

17   no one other than your attorney may make a statement on your

18   behalf.  If there are other people who want to say things about

19   you, particularly your history and characteristics, they may

20   write a letter to the probation officer, not to me, but to the

21   probation officer and send it to the probation officer so that

22   it is attached to and incorporated in the Presentence

23   Investigation Report.

24           Do you understand the objectives and factors I will be

25   evaluating in determining your sentence?

1          *THE DEFENDANT:*  Yes, ma'am.

2          *THE COURT:*  Do you understand the maximum sentence

3    that can be imposed?

4          *THE DEFENDANT:*  Yes, ma'am.

5          *THE COURT:*  Do you understand the charge you are

6    pleading guilty to is a felony charge?

7          *THE DEFENDANT:*  Yes, ma'am.

8          *THE COURT:*  Do you understand that may affect your

9    civil rights, including your right to vote, right to sit on a

10   jury, right to hold public office or obtain any number of

11   licenses that are issued by governmental authorities?

12         *THE DEFENDANT:*  Yes, ma'am.

13         *THE COURT:*  Do you also understand that it may

14   preclude you from possessing firearms?

15         *THE DEFENDANT:*  Yes, ma'am.

16         *THE COURT:*  Do you understand that the sentence I

17   impose may be more severe than what is calculated in Exhibit 1?

18         *THE DEFENDANT:*  Yes, ma'am.

19         *THE COURT:*  And do you understand that no matter what

20   the sentence is, if I accept your plea today, you won't be able

21   to withdraw it at the time of sentencing?

22         *THE DEFENDANT:*  Yes, ma'am.

23         *THE COURT:*  Do you have any questions about

24   sentencing?

25         *THE DEFENDANT:*  No, ma'am.

1          *THE COURT:*  Then Mr. Lozow, could you identify the

2     Statement in Advance, please.

3          *MR. LOZOW:*  With your permission, Your Honor, I would

4     identify that as Court Exhibit 2 that is in front of us and in

5     front of Mr. Bullock, Your Honor.

6          *THE COURT:*  Thank you.

7          Mr. Bullock, would you look at Exhibit 2 there.  Have

8     you read that document?

9          *THE DEFENDANT:*  Yes, ma'am.

10          *THE COURT:*  Have you discussed it with your attorney?

11          *THE DEFENDANT:*  Yes, ma'am.

12          *THE COURT:*  Have you asked him all the questions you

13     had about it?

14          *THE DEFENDANT:*  Yes, ma'am.

15          *THE COURT:*  Has he answered all of your questions?

16          *THE DEFENDANT:*  Yes, ma'am.

17          *THE COURT:*  Are there any other questions you want to

18     ask about it?

19          *THE DEFENDANT:*  No, ma'am.

20          *THE COURT:*  Then let's focus on the constitutional

21     rights that you are waiving.  But before we do so, make sure

22     that you signed this document.  Did you?

23          *THE DEFENDANT:*  Yes, ma'am.

24          *THE COURT:*  Is that your signature at the end of the

25     document?

1              THE DEFENDANT:  Yes.

2              THE COURT:  Thank you.

3         Then let's turn to the constitutional rights you are

4    giving up today by making your plea of guilty.  Under the

5    United States Constitution you have a number of rights and

6    protections that you are relinquishing or waiving today through

7    this Plea Agreement.  First and foremost, the Constitution

8    guarantees to you that when charges such as these are brought

9    against you, you have a right to have a jury determine them in

10   a jury trial.

11        Now, ordinarily that jury trial would take place in

12   this courtroom.  The jury would sit over to my left in the jury

13   box.  You and your attorney and the government's attorney would

14   participate in the selection of the people who would serve on

15   that jury.  And both of you could exclude any potential juror

16   who could not be fair and impartial or who was unable or

17   unwilling to follow the law.

18        Once the jurors are selected, each of the jurors takes

19   a solemn oath promising to consider only the evidence presented

20   here in the courtroom and to follow the instructions they are

21   given as to the law.  One of the instructions that I give them

22   tells them that in order to convict you on a charge brought

23   against you, they must reach a unanimous decision that the

24   government has proven every element of the charge beyond a

25   reasonable doubt.  If any one of them has a reasonable doubt as

1   to your guilt, you cannot be convicted.

2          Now, during the trial process you have other

3   constitutional rights, for example, the right to remain silent.

4   That has several aspects.  It means that you cannot be

5   compelled to answer any questions or to speak during the trial.

6   But in addition, the jury cannot consider your silence in

7   determining whether the government has proven every element of

8   a charge beyond a reasonable doubt.

9          And even if you remain silent, your attorney need not.

10  Your attorney can question, cross-examine all of the witnesses

11  called by the government, can object to the government's

12  evidence and can argue to me and also to the jury.

13         And finally, because this is a right, you can waive

14  it, so you can decide either before trial or during trial that

15  you would like to testify.  In addition, you can call witnesses

16  and put on evidence if you want to.  If the witnesses are

17  reluctant to come forward to testify, I will compel them to do

18  so.

19         Now, during the trial you also have yet another

20  constitutional right and that's the right to be represented by

21  an attorney, and where you cannot afford representation, to

22  have an attorney appointed to represent you without any costs

23  to you.  Now, I know that both of the Mr. Lozows have assisted

24  you here, one in negotiation of this Plea Agreement and then

25  Mr. Brad Lozow here at the hearing.

1          You could, if you chose to, prefer to go to trial.

2     And I will tell you that if you did decide to go to trial, that

3     notwithstanding their involvement with regard to this Plea

4     Agreement, they would provide you with competent, able

5     representation at trial.  And if you went to trial and you were

6     convicted, you can appeal both from your conviction and also

7     from your sentence.

8          But today by entering a plea of guilty to Count 31,

9     you are giving up your right to a jury trial.  You will not be

10    able to appeal from your conviction.  And for the most part you

11    will not be able to appeal from your sentence.

12         Do you understand that you are waiving your right to a

13    jury trial and all the constitutional rights that come with it?

14         *THE DEFENDANT:*  Yes, ma'am.

15         *THE COURT:*  Is that what you want to do?

16         *THE DEFENDANT:*  Yes, ma'am.

17         *THE COURT:*  Has anybody pressured you to make this

18    plea today?  And before you respond, let me define anybody.  It

19    has the broadest definition possible.  It includes family,

20    friends and neighbors and strangers and people you get along

21    with and people you don't get along with, people who are folks

22    you hang out with, people that you wish you would never see

23    again.  It includes the attorneys and the court staff and law

24    enforcement officers and anybody else.  Has anybody pressured

25    you to make this plea today?

1          *THE DEFENDANT:*  No, Your Honor.

2          *THE COURT:*  Has anybody promised you something that

3    isn't in the Plea Agreement?

4          *THE DEFENDANT:*  No, Your Honor.

5          *THE COURT:*  Have you had enough time to review and

6    consider and discuss your plea and Plea Agreement with

7    Mr. Lozow?

8          *THE DEFENDANT:*  Yes.

9          *THE COURT:*  Are you satisfied with him and his father

10   as your attorneys?

11         *THE DEFENDANT:*  Yes, ma'am.

12         *THE COURT:*  Do you have any concerns, complaints or

13   criticism about the legal representation you have received?

14         *THE DEFENDANT:*  No, ma'am.

15         *THE COURT:*  Do you want to ask Mr. Lozow any

16   questions?

17         *THE DEFENDANT:*  No, ma'am.

18         *THE COURT:*  Do you have any questions for me?

19         *THE DEFENDANT:*  No, ma'am.

20         *THE COURT:*  Well, then now is the time to finalize

21   your decision.  This Plea Agreement, the one you and I have

22   been talking about, Exhibit 1, do you want to proceed with it?

23         *THE DEFENDANT:*  Yes, ma'am.

24         *THE COURT:*  You still want to enter a plea of guilty

25   to Count 31 of the superseding indictment found at Docket

1    No. 180?

2         *THE DEFENDANT:*  Yes, ma'am.

3         *THE COURT:*  Mr. Lozow, any reason not to accept the

4    plea and Plea Agreement?

5         *MR. LOZOW:*  None to either question, Your Honor.

6         *THE COURT:*  Thank you.

7    Mr. Till?

8         *MR. TILL:*  No reason not to accept it, Your Honor.

9         *THE COURT:*  Thank you.

10        The Plea Agreement anticipates, Mr. Till, that the

11   government will move to dismiss all of the remaining charges

12   against Mr. Bullock.  Are you prepared to make that motion?

13        *MR. TILL:*  Yes.  I would like to enter the

14   government's oral motion to dismiss Count 32 of the superseding

15   indictment and the entirety of the original indictment as to

16   Mr. Bullock.

17        *THE COURT:*  Thank you.  Does Count 31 of the

18   superseding indictment reflect the seriousness of the actual

19   offense behavior?

20        *MR. TILL:*  It does, Your Honor.

21        *THE COURT:*  If I were to accept the plea and Plea

22   Agreement, would that undermine the statutory purposes of

23   sentencing in any fashion?

24        *MR. TILL:*  It would not, Your Honor.

25        *THE COURT:*  Thank you.

1          Mr. Lozow, I assume you have no objection to the

2    motion.

3          MR. LOZOW:  None at all, Your Honor.

4          THE COURT:  Thank you.

5          Do either of you desire to supplement the record?

6          MR. TILL:  Your Honor, I just would indicate that the

7    government is agreeable to the defendant remaining on bond

8    after the change of plea that goes through.

9          THE COURT:  Thank you.

10          MR. LOZOW:  Other than what was just indicated,

11    nothing other, Your Honor.

12          THE COURT:  Thank you.

13          Then based on the record made in open court this

14    afternoon in Case No. 12-CR-10, which is encaptioned for

15    purposes of this hearing as the United States of America v.

16    Romell E. Bullock, I hereby find that the defendant is fully

17    competent to enter an informed change of plea.  He has been

18    represented through the course of this case and this proceeding

19    and he has no objection, criticism or complaint as to the

20    representation he has received.  He is aware of the nature of

21    the charges against him and the effects and consequences of his

22    plea of guilty.

23          He has knowingly and voluntarily waived fundamental

24    constitutional rights, including his right to a jury trial.  He

25    understands that the penalty to be imposed will be based in

1    part on the facts stated in the Plea Agreement and that the

2    penalty may exceed the calculations in the Plea Agreement.  His

3    plea of guilty is voluntary and knowingly made and the charge

4    and plea is supported by an independent basis in fact.

5          The government has orally moved to dismiss Count 32 in

6    the superseding indictment and all counts against Mr. Bullock

7    in the original indictment.  Based on the representations made

8    by government's counsel, I find that the charge that he has

9    entered a plea to, Count 31, adequately reflects the

10   seriousness of the actual offense behavior and the agreement

11   does not undermine the statutory purposes of sentencing.

12         It's therefore ordered that Court Exhibits 1 and 2 are

13   received.  The plea made in open court today is accepted and

14   the defendant is adjudged guilty of the charge found in

15   Count 31 of the superseding indictment.  The government's

16   motion to dismiss all remaining counts is granted, but the

17   effect of this order is stayed until the time of sentencing.

18         The probation department will conduct a presentence

19   investigation and submit a Presentence Report as required by

20   Rule 32.  The defendant, with the assistance of counsel, will

21   participate in the investigation and cooperate fully with the

22   probation department.

23         Has there been a sentencing hearing set?  It looks

24   like it.  Or is there a new date that we need?

25         *THE COURT DEPUTY:*  We were just setting it now today.

1    I cleared it with counsel.

2            THE COURT:  So October 10th at 11:00 a.m., does that

3    work for everybody?

4            MR. TILL:  Yes, Your Honor.  Thank you.

5            MR. LOZOW:  Yes, Your Honor.

6            THE COURT:  Thank you.

7            Then that will be our sentencing.  And, of course, the

8    trial against Mr. Bullock was vacated at the filing of the

9    notice of disposition.

10           With regard to pending motions, I think there are

11   some.  Docket No. 210, the defense motion for a bill of

12   particulars, 211, motion for separate trial, 212, motion to

13   preserve notes and tapes, 213, motion for disclosure of

14   confidential informants, 214, motion for leave to file

15   additional motions, and 351, a motion to modify conditions of

16   release.

17           MR. LOZOW:  May we withdraw those, please, Your Honor?

18           THE COURT:  Any objection?

19           MR. TILL:  Your Honor, the one motion still pending

20   before Judge Shaffer is 351.  I think we did appear before

21   Judge Shaffer and Judge Shaffer does expect to take up the

22   question and conclude that hearing at some time in the very

23   near future after today's proceedings.

24           THE COURT:  Okay.  Well, then, the motions found at

25   Docket Nos. 210, 211, 212, 213 and 214 are withdrawn.  And

1    Docket No. 351 will remain outstanding for Magistrate Judge

2    Shaffer's determination.

3        MR. LOZOW:  That was mine.  I apologize, Your Honor.

4        THE COURT:  Thank you.  Any further business by

5    government or defendant?

6        MR. TILL:  Nothing else, Your Honor.

7        MR. LOZOW:  Nothing else.  I am hopeful the Court

8    would allow the bond to remain until sentencing.

9        THE COURT:  The bond conditions will remain in effect

10   pending any modification by Magistrate Judge Shaffer.

11       That will conclude this hearing and we will stand in

12   recess.  Thank you, counsel.

13      (Recess at 4:11 p.m.)

14                    REPORTER'S CERTIFICATE

15     I certify that the foregoing is a correct transcript from

16   the record of proceedings in the above-entitled matter.  Dated

17   at Denver, Colorado, this 22nd day of August, 2013.

18

19                          S/Janet M. Coppock____

20

21

22

23

24

25