IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-CR-00010-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ROMELL E. BULLOCK,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
SENTENCING HEARING
_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER,

Judge, United States District Court for the District of

Colorado, commencing at 1:39 p.m., on the 17th day of July,

2013, in Courtroom A901, United States Courthouse, Denver,

Colorado.

**APPEARANCES**

    GUY TILL, Assistant U.S. Attorney, 1225 17th Street,

Suite 700, Denver, Colorado, 80202, appearing for the

Government.

    DONALD LOZOW, Attorney at Law, 1600 Stout Street,

Suite 1910, Denver, Colorado, 80202, appearing for the

Defendant.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

**P R O C E E D I N G S**

1

2     *THE COURT:*  We're convened this afternoon in Case No.

3     12-cr-10, which is encaptioned for purposes of today's hearing,

4     a sentencing hearing, as the United States of America v. Romell

5     E. Bullock.  The matter is set down, as I said, for sentencing.

6           Could I have entries of appearance, please.

7     *MR. TILL:*  Your Honor, I'm Guy Till.  I'm an assistant

8     U.S. attorney representing the Government.  Also present at

9     counsel table for the Government this afternoon is ATF Special

10    Agent Jason Cole.

11    *THE COURT:*  Good afternoon, welcome.

12    *MR. TILL:*  Thank you, Your Honor.

13    *MR. LOZOW:*  Don Lozow, Your Honor, for the defendant,

14    who stands to my -- who sits to my left, Mr. Bullock.

15    *THE COURT:*  Good afternoon and welcome.

16          Are you all ready to proceed?

17    *MR. TILL:*  Government is ready, Your Honor.

18    *MR. LOZOW:*  Defendant is ready, Your Honor.

19    *THE COURT:*  Thank you.

20          Mr. Lozow, would you and Mr. Bullock please approach

21    the lectern.

22    *MR. LOZOW:*  Yes, ma'am.

23    *THE COURT:*  This matter is before the Court for

24    purposes of sentencing.  The record reflects that Mr. Bullock

25    was charged on January 9, 2012, in a 32-count Indictment filed

1    with this court as Docket No. 1.  He was charged in Count 31

2    with conspiracy to use and maintain a drug-involved premises in

3    violation of 21 U.S.C. Sections 846 and 856(a)(1) and (2) and

4    (b).  He was also charged in Count 32 with using and

5    maintaining a drug-involved premises, aiding and abetting, in

6    violation of 21 U.S.C. Section 856(a)(1), (2) and (b) and 18

7    U.S.C. Section 2.  There was a forfeiture allegation in the

8    initial Indictment.  He entered a plea of not guilty to these

9    charges.

10         Then on February 6, 2012, a 38-count First Superseding

11   Indictment was filed.  It was filed at Docket No. 180.  And it

12   charged him in Count 31 with conspiracy to use and maintain

13   drug-involved premises in violation of 21 U.S.C. Sections 846

14   and 856(a)(1), (2) and (b) and in Count 32 with using and

15   maintaining drug-involved premises, aiding and abetting, in

16   violation of 21 U.S.C. Section 856(a)(1), (2) and (b) and 18

17   U.S.C. Section 2.  It too contained a forfeiture allegation,

18   and the defendant entered a plea of not guilty.

19         On June 26, 2012, the defendant -- pursuant to the

20   terms of a written plea agreement, the defendant changed his

21   plea to a plea of guilty to Count 31 of the First Superseding

22   Indictment.  Pursuant to the plea agreement, the Government

23   moved to dismiss the remaining count in the first Superseding

24   Indictment, that was Count 32, and all counts in the underlying

25   Indictment as to this defendant.  I accepted his plea of guilty

1    and granted the Government's oral motion to dismiss, staying

2    the effect until the time of sentencing, which is today.

3          He's before the Court for purposes of sentencing,

4    therefore, on the charge that was found in Count 31 of the

5    first Superseding Indictment, conspiracy to use and maintain a

6    drug-involved premises.

7          In preparation for this hearing, I've had the

8    opportunity to review a number of documents, Docket No. 625,

9    which was the initial presentence report; Docket No. 630, a

10   memorandum filed by the defendant; 899, a revised presentence

11   report; 900, an addendum to that report; 908, a motion for

12   downward departure pursuant to Section 5K1.1 filed by the

13   Government; and Docket No. 913, a response to that motion.

14         Let me inquire of you, counsel, whether you and the

15   defendant have had adequate opportunity to review and consider

16   the contents of those documents.

17         *MR. LOZOW:*  Yes, we have, Your Honor.

18         *MR. TILL:*  The Government has also, Your Honor.

19         *THE COURT:*  Thank you.

20         Any other documents I should be considering?

21         *MR. TILL:*  Not from the Government.

22         *MR. LOZOW:*  Not from the defendant, Your Honor.

23         *THE COURT:*  Thank you.

24         With regard to the revised presentence report at

25   Docket No. 899, is there any dispute as to the facts contained

1    in that document?

2              *MR. TILL:*  No, Your Honor.

3              *MR. LOZOW:*  No, Your Honor.

4              *THE COURT:*  Any dispute as to the calculation of the

5    sentence under the federal sentencing guidelines as contained

6    in that document?

7              *MR. TILL:*  No, Your Honor.

8              *MR. LOZOW:*  No, Your Honor.

9              *THE COURT:*  There is a motion for downward departure.

10   That motion is found at Docket No. 908.  Mr. Till, do you care

11   to supplement?

12             *MR. TILL:*  Yes, Your Honor.  Advise the Court that we

13   did debrief with Mr. Bullock.  He is a fully patched, tattooed

14   member of Hells Lovers motorcycle club.  I don't think he's

15   active at this time, but he was during the time of the

16   Indictment and Superseding Indictment allegations.  He did

17   explain to us his understanding of how the Hells Lovers

18   motorcycle club worked, what the allocation of responsibilities

19   were, who took care of things like clubhouse weapons, clubhouse

20   ammunition, things of that nature, so he was very helpful to us

21   in that regard.

22             It was made known when he filed his notice of

23   disposition, filed this plea agreement, that he would be

24   cooperating with the Government.  And his cooperation with the

25   Government -- I can't say exactly which defendants are

influenced exactly what degree and what way, but he
definitely -- it's my belief and understanding that his
willingness to testify is the reason why other people who were
not so ready to accept responsibility, were not so ready to
cooperate with the Government did plead guilty in this case.
We do think he was helpful with this information, letting us
understand who did what.  And we think he was also instrumental
to get folks to come in and accept responsibility for things
they did.

   *THE COURT:*  Thank you.

   Mr. Lozow.

   *MR. LOZOW:*  Your Honor, we would agree with the
Government.  He stood ready -- in fact, this matter was
continued so that he would be prepared if they needed him to
testify.  That didn't occur.  That's why we -- I think
sentencing was put over at the Government's request, so he
would be available.

   *THE COURT:*  Thank you.

   Any request for a variant sentence?

   *MR. LOZOW:*  My apologies, Your Honor.  I didn't hear
what the Court said.

   *THE COURT:*  Any request for a variant sentence?

   *MR. LOZOW:*  Your Honor, I'm -- my apologies, again.
We have made a request that the Court grant the downward
departure -- I'm not so sure that this is the right time to say

1    that -- and that he be granted probation in this case.  And I

2    think we've set out the reasons in our defendant's motion in

3    support of Government's downward departure.  And I've not

4    answered the Court properly, I'm sorry.

5            THE COURT:  Did you file a motion for a variant

6    sentence?

7            MR. LOZOW:  No, we did not, Your Honor.  We filed the

8    defendant's motion in support of the Government's Section --

9    for the downward departure.

10           THE COURT:  In that response, you have asked for a

11   sentence of a term of home confinement of up to 10.8 months.

12   You've not asked for probation.

13           MR. LOZOW:  My apologies, Your Honor.  I assumed that

14   I could do that -- I brought people in, and I assumed we could

15   do that orally at this time, and that's what we're asking the

16   Court to consider.  And I can give the Court the reasons if the

17   Court would like, as to why I believe he should get probation.

18           THE COURT:  Well, there is a problem here, counsel.

19   There is a local rule that says that if you're going to file a

20   motion for a downward departure or for a variance, you needed

21   to do so by a particular date.

22           Does the Government object to the Court hearing an

23   oral motion for variance?

24           MR. TILL:  In this particular case, we don't.

25           THE COURT:  All right.  Then you may make your motion

 1   orally, Mr. Lozow.

 2        *MR. LOZOW:*  Your Honor, Mr. Bullock will have things

 3   to say.  We have members here to show that he's got family

 4   support.  We have people who work for him, relatives.  He's a

 5   hard-working gentleman.  I think the Court -- when the Court

 6   talks to him, he'll indicate what his problems were and what

 7   he's learned from this.  I believe he's been write-up free

 8   under pretrial services, and I think he'd be proper for

 9   probation.  And I just -- here is a man who has worked very

10   hard all his life, he's got a good job, he's got family and

11   support, and I think probation is proper in this case, Your

12   Honor.

13        And I'm sorry I didn't file it in the proper manner,

14   and I appreciate the Government's allowing me to argue it

15   orally at this time.

16        *THE COURT:*  Thank you.

17        Response.

18        *MR. TILL:*  Your Honor, my understanding of the 5K

19   motion is that if the Court grants that, I believe it would be

20   in the zone B, in terms of the time he's looking at, and he

21   would be probation eligible.  And if he isn't quite in zone B,

22   if that -- if a variance is necessary, I don't object to the

23   Court locating him in zone B for purposes of sentencing him, if

24   the Court is inclined to do that.

25        And I think that the terms that they proposed of

1    intermittent confinement or home detention, something along

2    those lines, I think that would be consistent with what Section

3    5B1.1 calls for, Your Honor.

4         THE COURT:  They're asking for probation.  That's

5    different than home confinement.

6         MR. TILL:  Your Honor, I'm looking at 5B1.1.  And you

7    clearly are the expert here, I apologize.  But I'm just looking

8    at 5B1.1, it's captioned -- it says imposition of a term of

9    probation, then it says, 5B1.1(a)(2), that the applicable zone,

10   if it's in zone B, and the Court imposes a condition or a

11   combination of conditions requiring intermittent confinement,

12   community confinement, or home detention as provided.  I

13   understood that to mean that that would be a condition of

14   probation.  I guess what I'm recommending to the Court is

15   probation with a condition of home confinement.

16        THE COURT:  Is that what you're asking for, Mr. Lozow?

17        MR. LOZOW:  Yes, Your Honor.

18        THE COURT:  Probation with home confinement?

19        MR. LOZOW:  Your Honor, we -- what we're asking is

20   straight probation.  What we want to do is get probation.  If

21   as a condition gets home confinement, we would certainly be

22   better off than having incarceration.  Our request is for

23   straight probation, Your Honor.

24        THE COURT:  And I understand the Government to oppose

25   that request, requesting that there be home confinement of 10.8

1    months, correct?

2            *MR. TILL:*  That's correct, Your Honor.

3            *THE COURT:*  Thank you.

4            *MR. LOZOW:*  Your Honor, again -- I'm sorry, the Court

5    didn't ask me anything, I'm sorry.

6            *THE COURT:*  Go ahead.

7            *MR. LOZOW:*  Your Honor, we would happily accept that,

8    Your Honor.

9            *THE COURT:*  Okay.  Then let me hear any argument you

10   have with regard to the sentence to be imposed.  We'll start

11   with Mr. Lozow.

12           *MR. LOZOW:*  Your Honor, once again, I don't know that

13   I'm not repeating myself.  I believe this gentleman has learned

14   from this situation.  He's prepared to speak to the Court about

15   that.  He has support, the people are here.  We're not calling

16   them as witnesses.  He's got a job.  He works.  He was write-up

17   free for pretrial services.  And I think that probation with

18   home detention would be a proper remedy in this case, Your

19   Honor, and serve substantial justice.  And I would leave it to

20   the Court's discretion.

21           *THE COURT:*  Thank you.

22           Mr. Till.

23           *MR. TILL:*  Your Honor, the defendant, I believe, from

24   my understanding, is a hard-working individual.  That's a good

25   thing, some sort of a core activity for to build on for him.  I

1    am concerned by his criminal history category.  And I am

2    concerned that he is full-grown person, basically, and I think

3    sometimes habits are hard to change.  I ask the Court for a

4    substantial period of probation with a period of home

5    detention.  And by substantial period of probation, I'm

6    suggesting 2 years, Your Honor.

7         THE COURT:  I have a question as to whether probation

8    with home detention can be imposed.

9         MR. TILL:  Your Honor, you're the expert in these

10   things.

11        THE COURT:  I'm not the expert in these things.

12        PROBATION OFFICER:  Your Honor, I think the Court does

13   have the option of either imposing probation with home

14   detention or a time-served sentence with home detention as a

15   special condition.  Because it's my understanding he has 13

16   days of presentence confinement, so a time-served sentence

17   would essentially be the same as probationary sentence.

18        THE COURT:  There is a big difference, though, between

19   supervised release with detention and probation with home

20   detention, because the penalty for violating the terms and

21   conditions are different.

22        PROBATION OFFICER:  That's correct, Your Honor.

23        THE COURT:  What is it, counsel, you'd like?

24        MR. TILL:  I'd ask for probation with home detention.

25        THE COURT:  We're going to take about a 10-minute

1   recess.  And, counsel, you may want to talk with the probation

2   officer about the difference between supervised release with

3   home detention and probation with home detention.

4          I want to be sure that everybody understands what it

5   is they're asking for and what the downsides are or the risks

6   associated with each sentence.

7          We'll stand in recess for about 10 minutes.

8          MR. TILL:  Thank you, Your Honor.

9          MR. LOZOW:  Thank you for the courtesy, Your Honor.

10         (Recess from 1:54 p.m. to 2:01 p.m.)

11         THE COURT:  Counsel, have you had an opportunity to

12  confer with the probation officer?

13         MR. LOZOW:  Yes, Your Honor, and the U.S. attorney.

14         THE COURT:  And have you also, Mr. Lozow, conferred

15  with your client?

16         MR. LOZOW:  He was present for the whole discussion,

17  Your Honor.

18         THE COURT:  Okay.  What is it that the defendant would

19  like here?

20         MR. LOZOW:  Time served, 2 years supervised release,

21  10 months home detention.

22         THE COURT:  And what would the Government like?

23         MR. TILL:  Your Honor, the Government agrees.

24         THE COURT:  Okay.  Any further argument, Mr. Lozow?

25         MR. LOZOW:  No, Your Honor.

1          THE COURT:  Any argument by you, Mr. Till?

2          MR. TILL:  No, Your Honor.  Thank you.

3          THE COURT:  And with regard to Mr. Bullock, what would

4     you like me to know?

5          THE DEFENDANT:  Your Honor, I've learned my lesson in

6     this.  This has just been too much.  I've learned to respect

7     the law.  I've learned that my associations with people need to

8     be a little bit more filtered, and I'm --

9          THE COURT:  What did you do that was wrong here?

10          THE DEFENDANT:  A lot.

11          THE COURT:  Well, I'm not -- I'm not asking about

12     quantity.  I want to know what you've learned.  So what did you

13     do that was wrong here that you won't do again in the future?

14          THE DEFENDANT:  I broke the law.  I was involved in a

15     criminal organization that -- there was guns present, drugs

16     being used.  I'm not personally a drug user, but being around

17     it or being part of it doesn't make an excuse.  I've disobeyed

18     the law.  I just -- there is a lot of things that has gone on,

19     and I just -- as of now, as at the point I got arrested, I've

20     separated myself from that.

21          THE COURT:  Let me see if I can take it from another

22     angle.

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  If you were to advise a child what to

25     learn from your experience and what to avoid or do differently,

1     what would you tell that child?

2          THE DEFENDANT:  I tell my kids all the time, first of

3     all, don't follow my example.  Second of all, that breaking the

4     law is not worth the consequences that you eventually go

5     through.  My family has been going through this, my kids have

6     gone through this.  The heartache that I've put on them,

7     it's -- me breaking the law and doing the things that I've done

8     in my life has -- has affected so many people.  It's not me

9     that is paying the cost, it's these people behind me that is

10    paying the cost, people that work for me, people that care

11    about me.  My family hasn't slept in days, and I did that.

12         THE COURT:  And I understand that, and I hear your

13    remorse.  But what if that child says to you, so how do I avoid

14    breaking the law?  What should I do or not do?

15         THE DEFENDANT:  Watch your associations, first of all,

16    watch who you hang around with, because the influences will

17    make you -- what you are -- who you hang around with will make

18    you who you are.  I will tell them, focus your mind -- you have

19    too much energy to be focused on negative things and negative

20    influences -- negative ways of life.  If you want to --

21         I joined this club because I love riding motorcycles.

22    I should have continued to enjoy motorcycles.  I didn't need

23    them to enjoy my motorcycles.  I -- if anybody -- you know,

24    everybody in this courtroom will know -- even Mr. Till knows, I

25    live right down the street from him, he sees me all the time --

1    I'm at work 80 hours a week.  I joined this because I wanted

2    something for myself.  I feel like I work for my family, I work

3    for my kids.  That's what -- I did this because I thought I

4    needed something for me, you know.

5            THE COURT:  Well, joining a group is not against the

6    law.  So what was it that you did that was against the law?

7            THE DEFENDANT:  I've allowed people -- there has been

8    drugs involved, there has been guns involved, there has been

9    fights involved.  These are all things that I'm guilty of.

10   I've --

11           THE COURT:  Fighting, using drugs, and having guns?

12           THE DEFENDANT:  Correct.

13           THE COURT:  And what would you tell your kids about

14   fighting and using drugs and having guns?

15           THE DEFENDANT:  They're against the law.  They're

16   things that you don't do.  Maybe I'm just not understanding the

17   question.  I -- I speak to my kids all the time, and I --

18           THE COURT:  I'm sure you do.  But what I'm trying to

19   assess here, sir, is if you understand what conduct was

20   illegal.  And only after I'm sure you understand that can I

21   make a determination as to whether you're likely to repeat it.

22           THE DEFENDANT:  I know these things are illegal.  I

23   know these things are against the law.  I know these things

24   were just stupid.  And I don't understand, maybe, the question

25   completely.  But I know these things are against the law, and I

1    know I did these things.

2           THE COURT:  When you are saying "these things," what

3    are we talking about?

4           THE DEFENDANT:  I've carried guns, I've had drugs,

5    I've transported drugs, I've gotten into fights, I put my hands

6    on other people in the color of the club.  I have -- there is

7    numerous amount of things that just are completely illegal.

8           THE COURT:  And what are you going to do in the

9    future?

10          THE DEFENDANT:  I -- it sounds really minuscule or I

11   guess, small, but just continue doing what I'm doing.  I work,

12   I go to school, I have my kids every weekend, just fill my life

13   with different things.

14          THE COURT:  Are you going to have anything to do with

15   guns?

16          THE DEFENDANT:  Definitely not.

17          THE COURT:  Are you going to have anything to do with

18   drugs?

19          THE DEFENDANT:  Definitely not.

20          THE COURT:  Are you going to get in fights?

21          THE DEFENDANT:  No.

22          THE COURT:  That's what I need to know.  Thank you.

23          THE DEFENDANT:  Okay.

24          THE COURT:  Any further argument?

25          MR. TILL:  Nothing from the Government, Your Honor.

1          MR. LOZOW:  Nothing from defense counsel, Your Honor.

2          THE COURT:  Thank you.

3          Then I'll announce the sentence I intend to impose.

4    Of course, counsel, you'll have a final opportunity to make

5    legal objections before judgment is entered.  If you believe

6    that the sentence is premised upon error or if I raise an issue

7    you haven't had adequate opportunity to consider and address, I

8    invite you to request a continuance.

9          Imposition of a sentence in a federal criminal case is

10   governed by a number of statutes.  The umbrella statute is 18

11   U.S.C. Section 3553.  In imposing sentence in this case, I have

12   to consider the objectives and the factors that are set forth

13   in that section.  That statute requires that the sentence be

14   sufficient but not greater than necessary to satisfy particular

15   objectives.  The sentence must reflect the seriousness of the

16   offense; promote respect for the law; provide just punishment;

17   adequately deter criminal conduct; protect the public from

18   further crimes by the defendant; and provide the defendant with

19   needed educational or vocational training, medical care, or

20   other correctional treatment in the most effective manner.

21         To fashion a sentence that meets these objectives, the

22   statute directs me to consider certain factors:  The nature and

23   circumstances of the offense; the history and characteristics

24   of the defendant; the kinds of sentences that are available;

25   the sentence prescribed by the federal sentencing guidelines;

1    the need to avoid unwarranted sentence disparities among

2    defendants with similar records found guilty of similar

3    conduct; and in the appropriate case, I would consider the need

4    for restitution.

5         Now, at the beginning of this hearing, I identified

6    the documents that I studied in preparation for it.  I

7    confirmed with counsel that both sides, including the

8    defendant, had had an opportunity to review and consider those

9    documents.  I asked whether there were any additional documents

10   to consider and was told that there were not.  I asked whether

11   there was any dispute as to the factual contents of the

12   presentence report; there was not.  I asked whether there was

13   any dispute as to the calculation of the sentence under the

14   federal sentencing guidelines; there was not.

15        I therefore start with the calculation under the

16   federal sentencing guidelines.  It is as follows:

17        For violation of 21 U.S.C. Section 846 and 856(a)(1)

18   (2) and (b), sentencing guideline Section 2D1.8 applies.  It

19   directs that the total offense level be determined in

20   accordance with Section 2D1.1.  Here, because the type and

21   amount of drugs involved in this offense was approximately 8.58

22   kilograms of marijuana, the Base Offense Level is 14, in

23   accordance with Section 2D1.1(c)(13).

24        There is a specific offense characteristic under

25   Section 2D1.1(b)(12).  That's a two-level increase when a

1    defendant maintains a premises for the purpose of manufacturing

2    or distributing a controlled substance.  According to the

3    stipulation of facts in the plea agreement, the defendant paid

4    monthly dues to support the Hells Lovers motorcycle club

5    activities, which included maintaining and using the clubhouse

6    for the purpose of manufacturing or distributing a controlled

7    substance.  He was aware of the illicit drug use by other

8    members and may have participated in it as well.

9           Then there is a downward adjustment for his acceptance

10   of responsibility.  The offense level is reduced by three

11   levels because the offense level is 16 or greater, and both

12   provisions of Section 3E1.1 have been satisfied.  This is the

13   largest acceptance of responsibility downward adjustment

14   permissible under the guidelines; it's a three-level reduction.

15   That results in a Total Offense Level of 13.

16          The other component under the guidelines is

17   calculation of someone's criminal history.  And here,

18   Mr. Bullock has a criminal history that dates back into the

19   early '90s.  He has a number of convictions since he became an

20   adult.  The total number of points under the criminal history

21   calculation is 6.  That puts him in Criminal History Category

22   III.  That is Category III out of 6 categories.  There are a

23   number of convictions for which no points have been assigned

24   for various reasons, including the age or the nature of the

25   conviction.  But there are some serious convictions,

1    approximately six to ten years ago, which comprise the

2    calculation leading to the Criminal History Category of III.

3            With a Criminal History Category of III and an offense

4    level of 13, the guidelines recommend incarceration of 18 to 24

5    months, a supervised release term of 1 to 3 years, a fine of

6    3,000 to $500,000, a special assessment of $100 is mandated by

7    statute.

8            Under the guidelines, the Government has moved for

9    what is called a 5K1.1 departure.  That is due to Mr. Bullock's

10   debriefing with the Government and explanation of how the Hells

11   Lovers motorcycle club worked, its structure, its membership,

12   et cetera.

13           With a 5K1.1 departure, the request of the Government

14   is that there be a 40 percent reduction in the incarceration

15   time period.  A 40 percent reduction off of the bottom end of

16   the guidelines would take the guideline calculation for

17   incarceration to approximately 10 months.  The defendant

18   supports this motion, and the Court makes an independent

19   determination as to whether it is warranted.

20           There has been in this case a pattern of 5K1.1 motions

21   made by the Government with regard to a number of defendants.

22   The 40 percent reduction in sentence that is requested by the

23   Government is consistent with the same reduction that is

24   requested with regard to other defendants.  And therefore,

25   taking into account the need to avoid unwarranted sentence

1   disparities among defendants with similar records found guilty

2   of similar conduct, and taking into account the representations

3   made by the Government as to the debriefing provided by

4   Mr. Bullock, I grant the 5K1.1 motion.  That changes the

5   calculation under the guidelines to a custodial period of 10

6   months, supervised release still of 1 to 3 years --

7            And I'm going to ask our probation officer, how does

8   it change the fine range?

9            *PROBATION OFFICER:*  Your Honor, that would be $2,000

10  to still $500,000.

11           *THE COURT:*  Okay.  $2,000 to $500,000.  Thank you.

12           And this puts -- puts Mr. Bullock in zone B, correct?

13           *PROBATION OFFICER:*  That is correct, Your Honor.

14           *THE COURT:*  All right.  Mr. Lozow on behalf of the

15  defendant has asked for a variant sentence.  And, actually, I

16  think that request for a variant sentence is moot in light of

17  the granting of the 5K1.1 motion by the Government.

18           Is that correct, Mr. Lozow?

19           *MR. LOZOW:*  Yes, Your Honor.

20           *THE COURT:*  Okay.  Now a word about what we do with

21  regard to this guideline sentence.  There is often a

22  misunderstanding about the purpose of sentencing.  It's not to

23  determine whether the defendant is a good person or a bad

24  person.  I'm not capable of making that determination, and it's

25  not appropriate for me to do so.  I subscribe to the notion

1     that every person is as good as their best deed and as bad as

2     their worst deed.  And since I don't know a person's best deed

3     or worst deed, I can't set the parameters as to a person's

4     goodness or badness.

5          What sentencing is about is holding somebody

6     responsible for their conduct.  And that is why I asked the

7     questions that I did.  Mr. Bullock is very fortunate to have

8     many people who think highly of him.  But, frankly, that

9     doesn't affect sentencing.  Whether someone has a supportive

10    family, whether someone has supportive friends is a benefit to

11    the defendant; but that is not a factor that I take into

12    account in sentencing.  Because sometimes people make bad

13    choices when they have a lot of supportive family, and

14    sometimes people make bad choices when they don't have any

15    supportive family.  What they're being held accountable for is

16    their bad choice, not whether they're fortunate enough to have

17    supportive family or not.

18         Now, what influences my decision in this case is the

19    actions of Mr. Bullock, both the mistakes he's made -- and he

20    does have a Criminal History Category of III -- but also the

21    fact that in the last five or six years, he has worked

22    diligently to build a business and to change his behavior.

23         In his allocution, after some questioning, he could

24    identify what he did wrong, and he could commit to not doing

25    that in the future.  That is one of the indicators that the

1    Court takes into account in determining whether I need to

2    protect the public from further crimes by the defendant.  How

3    self-aware is he?  Has he changed how he operates?  Does he

4    know what he did wrong?  Is he committed to not doing that

5    again in the future?

6            I'm convinced that Mr. Bullock regrets the impact this

7    conviction has had on his family, but that is not the regret

8    that I asked about.  It is, instead, regret for the conduct

9    that was illegal.  And as I've said, ultimately, Mr. Bullock

10   explained what he did that was illegal and that he does not

11   intend to do that in the future.

12           Keeping that in mind, and noting the sentences imposed

13   against other similarly situated defendants here, I intend to

14   impose a guideline sentence, which is a zone B sentence.  It

15   will be a sentence of time served, followed by supervised

16   release of 2 years, with a condition of home confinement and

17   electronic monitoring for a period of 10 months.

18           I do not intend to impose a fine, finding that

19   Mr. Bullock lacks the ability to pay a fine.  I do not intend

20   to impose any special conditions on supervised release, other

21   than home detention, but all mandatory and standard conditions

22   will apply.  I intend to impose a special assessment of $100.

23           So summarizing the sentence I intend to impose, it is

24   time served followed by 2 years of supervised release, with a

25   special condition of home detention of 10 months, no fine, and

1    a special assessment of $100.

2         Is there any need for clarification or further

3    explanation or a request for a continuance?

4         *MR. TILL:*  Not from the Government, Your Honor.

5         *MR. LOZOW:*  Not from the defendant, Your Honor.

6         *THE COURT:*  Thank you.

7         Having considered the sentencing objectives and

8    sentencing factors as articulated in 18 U.S.C. Section 3553,

9    pursuant to the Sentencing Reform Act of 1984, it is the

10   judgment of the Court that the defendant, Romell E. Bullock, be

11   committed to the custody of the Bureau of Prisons to be

12   imprisoned for the time that he has already served.

13        He will be, therefore, placed on immediate supervised

14   release for a term of 2 years, with -- at the direction of the

15   probation officer, he will report in person to the probation

16   office and shall make appropriate arrangements for home

17   detention and electronic monitoring consistent with the special

18   condition imposed on supervised release.

19        While he's on supervised release, he will not commit

20   another federal, state, or local crime; he will not possess a

21   firearm as defined in 18 U.S.C. Section 921; he'll comply with

22   the standard conditions that have been adopted by the Court.

23   He will not unlawfully possess a controlled substance.  He will

24   refrain from any unlawful use of a controlled substance.  He

25   will submit to at least one drug test within 15 days of release

1    on supervised release and at least two periodic tests

2    thereafter.  He'll cooperate in the collection of DNA as

3    directed by the probation officer.  No fine is imposed for the

4    reasons specified, but he will pay a special assessment of

5    $100, which is due and payable immediately.  And for the period

6    of 10 months on supervised release, he will be subject to home

7    confinement, monitored electronically.

8            Mr. Bullock, to the extent that you have a right to

9    appeal, you must exercise that right within the next 14 days.

10   If you do not do so, you lose your right to appeal.  Now,

11   ordinarily, Mr. Lozow would take care of that for you.  To --

12   in order to exercise your right to appeal, you would have to

13   file a notice of appeal, and he would do that.  But if for some

14   reason you want to appeal, and he's unable or unwilling to file

15   the notice of appeal for you, you can request and I will direct

16   the Clerk of Court to file a notice of appeal on your behalf.

17           Is there any further business to bring before the

18   Court?

19           *MR. TILL:*  No, Your Honor.  Thank you.

20           *MR. LOZOW:*  No, Your Honor.  Thank you.

21           *THE COURT:*  Thank you, Mr. Till; thank you, Mr. Lozow.

22           Good luck to you, Mr. Bullock.  Hope not to see you

23   back here in this courtroom.

24           Is there a bond to be exonerated?

25           *PROBATION OFFICER:*  Yes, there is, Your Honor.

1          *THE COURT:*  Thank you.  The bond is exonerated.  That

2     will conclude this matter.  We'll stand in recess.

3          *MR. LOZOW:*  Thank you, Your Honor.

4          (Recess at 2:27 p.m.)

5                          REPORTER'S CERTIFICATE

6

7          I certify that the foregoing is a correct transcript from
      the record of proceedings in the above-entitled matter.

8

9          Dated at Denver, Colorado, this 17th day of July, 2013.

10                              s/Therese Lindblom

11         _____

12                         Therese Lindblom,CSR,RMR,CRR

13

14

15

16

17

18

19

20

21

22

23

24

25